# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 8:14-CV-2997-PWG |
| ACM SERVICES, INC., | ) ) | **CONSENT DECREE** |
| Defendant. | ) ) ) | |

## INTRODUCTION AND FINDINGS

On September 22, 2014, the U.S. Equal Employment Opportunity Commission ("Commission" or "EEOC") filed this action against Defendant ACM Services, Inc. ("Defendant") alleging that Defendant has engaged in a pattern or practice of race discrimination in recruitment and hiring against Black job applicants and a pattern or practice of sex discrimination in hiring against female job applicants in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). EEOC further alleged that Defendant subjected Charging Party Yansi Carranza to sexual and race/national origin harassment and retaliatory discharge in violation of Title VII. EEOC further alleged that Defendant subjected Charging Party Nancy Aronez to race/national origin and sexual harassment and retaliatory discharge in violation of Title VII.

EEOC and Defendant now desire to resolve this action and all claims asserted in EEOC's Complaint without the time and expenditure of contested litigation. Accordingly, EEOC and Defendant have entered into this Consent Decree to resolve EEOC's claims, to avoid the delay, costs and risks of further proceedings, and to promote

and effectuate the purposes of Title VII.

The Court finds that it has jurisdiction over the subject matter of this action and the parties for purposes of the action, entry of the Consent Decree, and all proceedings related to the Consent Decree.

The Court, having examined the terms and provisions of the Consent Decree, further finds that it is reasonable and just in accordance with the Federal Rules of Civil Procedure and Title VII.

The Court further finds that entry of this Consent Decree will further the objectives of Title VII and will be in the best interests of the parties, those for whom the EEOC seeks relief, and the public.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

<u>DEFINITIONS</u>

A.      "Defendant" means ACM Services, Inc. and its successors, assigns, agents, and all persons and entities in active concert.

B.      "Commission" or "EEOC" is the U.S. Equal Employment Opportunity Commission, an agency of the United States Government.

C.      The term "hire" or "hiring" refers to the filling of a job opening by an individual who is new to Defendant's employ, was previously employed by Defendant but not presently employed by the Defendant, or is an employee of Defendant but new to the job title she or he has sought.

D.      The terms "selection," "select," or "selected," when used in reference to temporary/contingent workers, means the decision whether to utilize or not utilize the services of a temporary/contingent worker who has been referred to Defendant by an

2

employment agency for available field laborer work.

E.     "Eligible Hiring Claimants" or "Eligible Hiring Claimant" refers to Black persons who sought payroll employment or were referred. by an employment agency for a temporary/contingent worker assignment with Defendant as a laborer or other field operations position at any time during the period January 1, 2005, until the date of entry of this Decree or female persons who sought payroll employment or were referred by an employment agency for a temporary/contingent worker assignment with Defendant as a laborer or other field operations position at any time during the period March 17, 2009, until the date of entry of this Decree; possessed  an asbestos removal certification; and were not hired or given a bona fide offer of employment by Defendant or, with regard to temporary/contingent workers, were not selected by Defendant for available work.

F.     "Eligible Recruitment Claimants" or "Eligible Recruitment Claimant" refers to Black persons who worked for any person or entity as laborers or in other field operations positions that were comparable to those existing within Defendant's workforce or Black persons who were seeking such employment, at any time during the period January 1, 2005, until the date of entry of this Decree; possessed  an asbestos removal certification; resided in Maryland, the District of Columbia, or Virginia within 75 miles of ACM's office which is located at 12022 Parklawn Drive, Rockville, MD 20852 at any time during the aforementioned period; and state under oath or penalty of perjury that had they been aware of employment opportunities with Defendant during the aforementioned period they would have applied for a position with Defendant.

G.     "Hiring authority" or "hiring authorities" refers to personnel of the Defendant or any third-party who participate in hiring or selection decisions related to screening,

interviewing and/or hiring of job applicants or temporary/contingent workers, as well as any managerial personnel with a direct or successively higher supervisory role over such hiring authorities.

H.      "Day" or "days" refers to calendar days unless otherwise indicated.

I.      "Qualified" when referring to a job applicant, employee, or other worker means that the individual possesses, at the time of the hiring or selection decision, an occupational certification or licensure (e.g., asbestos certification) required for the position in question, if all persons selected for that position are required to have such certification or licensure.

## GENERAL PROVISIONS AND COURT ENFORCEMENT POWERS

1.      This Decree constitutes full discharge and satisfaction of any claims which have been alleged in the Complaint filed in this Title VII action by the EEOC based on the EEOC reasonable cause Determinations regarding the charges of discrimination filed by Yansi Carranza and Nancy Aronez.

2.      EEOC and Defendant shall bear their own attorney's fees and costs incurred in connection with this action.

3.      This Court shall retain jurisdiction to enforce the terms of this Decree and will have all available powers to enforce this Decree, including but not limited to monetary sanctions and injunctive relief.

## GEOGRAPHIC SCOPE AND DURATION OF DECREE

4.      This Decree shall apply to all of Defendant's facilities and work locations in the United States, its territories and possessions. In addition, extra-territorial application of this Decree shall be governed by controlling federal law under Title VII.

5.     This Decree shall become effective on the date of its entry by the Court and shall remain in effect until its expiration date, which shall be three (3) years after the date of its entry by the Court.

INJUNCTION

6.     Defendant, its officers, agents, servants, employees, successors in interest and all persons acting in concert or on its behalf are hereby enjoined and restrained from engaging in any employment practice that discriminates against job applicants and employees on the basis of race, national origin, or sex in violation of Title VII. Such enjoined and restrained practices include, but are not limited to, (a) subjecting Black job applicants to discrimination in recruiting or hiring because of their race; (b) subjecting female job applicants to discrimination in hiring because of their sex; or (c) subjecting employees to harassment because of their race, national origin, or sex.

7.     Defendant, its officers, agents, servants, employees, successors in interest and all persons acting in concert or on its behalf are hereby enjoined and restrained from engaging in any employment practice that discriminates on the basis of race, national origin, or sex in violation of Title VII with respect to the selection of temporary or contingent workers for available field laborer assignments. In this regard, Defendant shall not communicate to any employment agency any limitation because of race, national origin or sex or preference that the agency refer or not refer workers to Defendant for field laborer positions based upon the workers' race, national origin, or sex.

8.     Defendant, its officers, agents, servants, employees, successors in interest and all persons acting in concert or on its behalf are hereby enjoined and restrained from using

5

word-of-mouth techniques as the sole method for recruiting, identifying or soliciting workers for laborer or other field operations positions.

9.     Defendant, its officers, agents, servants, employees, successors in interest and all persons acting in concert or on their behalf are hereby enjoined and restrained from engaging in any employment practice that discriminates against employees or job applicants who oppose any practice made unlawful by Title VII.  Defendant is further enjoined and restrained from engaging in any employment practice that discriminates against any job applicant, employee or other person because he or she made a charge, or participated, testified or assisted the Commission in any manner, or sought or received relief in this action, the administrative proceedings preceding this action, or in any other proceeding under Title VII.

<u>CHARGING PARTY MONETARY RELIEF</u>

10.    Defendant shall pay monetary relief to Charging Party Yansi Carranza in the amount of $35,000.   Of this amount, $5000.00 shall constitute back pay and $30,000.00 shall constitute compensatory damages for emotional distress.   This monetary relief (less any applicable federal, state or local payroll tax regarding the amount constituting back pay) shall be paid in five (5) checks (one check for amounts constituting back pay and four checks for amounts constituting compensatory damages) made payable to Yansi Carranza in accordance with the following schedule: (a) $5000.00 check for back pay (less any applicable payroll tax withholdings consistent with method used for computing such withholdings during her employment) — due not later than 30 days after entry of the Decree by the Court; (b) $ 3,750.00.00 check for compensatory damages — due not later than thirty (30) days after entry of the Decree by the Court; (c)

6

$ 8,750.00 check for compensatory damages — due not later than sixty (60) days after entry of the Decree by the Court;  (d) $8,750.00 check for compensatory damages — due not later than ninety (90) days after entry of the Decree by the Court; and (e) $8,750.00 check for compensatory damages — due not later than ninety (120) days after entry of the Decree by the Court. As a precondition of payment, Ms. Carranza shall execute a release agreement, attached as Exhibit A, releasing Defendant from liability, and shall be responsible for all taxes, if any, due as a result of the above payment except that Defendant shall be responsible for paying its share of all applicable payroll taxes (e.g., FICA).  Defendant shall mail the aforementioned checks to Ms. Carranza by certified mail/return receipt or express overnight mail at an address to be provided by the EEOC

11.     Defendant shall pay monetary relief to Charging Party Nancy Aronez in the amount of $75,000.00.  Of this amount, $35,000.00 shall constitute back pay and $40,000.00 shall constitute compensatory damages for emotional distress.   This monetary relief (less any applicable federal, state or local payroll tax regarding the amount constituting back pay) shall be paid in five (5) checks  two checks for amounts constituting back pay and three checks for amounts constituting compensatory damages) made payable to Nancy Aronez in accordance with the following schedule: (a) $18,750.00, check for back pay (less any applicable payroll tax withholdings consistent with method used for computing such withholdings during her employment) — due not later than 30 days after entry of the Decree by the Court; (b)$16,250.00 check for remaining back pay (less any applicable payroll tax withholdings consistent with method used for computing such withholdings during her employment)due not later than 60 days after entry of this Decree by the Court; (c) $2,500.00 check for compensatory

7

damages — due not later than 60 days after entry of this decree; (d) $18,750.00 check for compensatory damages — due not later than ninety (90) days after entry of the Decree by the Court;; and (e) $18,750.00 check for compensatory damages — due not later than one hundred and twenty (120) days after entry of the Decree by the Court. As a precondition to payment, Ms. Aronez shall execute a release agreement, attached as Exhibit B, releasing Defendant from liability, and shall be responsible for all taxes , if any, due as a result of the above payment, except that Defendant shall be responsible for paying its share of all applicable payroll taxes (e.g., FICA). Defendant shall mail the aforementioned checks to Ms. Aronez by certified mail/return receipt or express overnight mail at an address to be provided by the EEOC.

12.    Defendant shall send a photocopy of the checks payable to Yansi Carranza and Nancy Aronez, along with a photocopy of the certified mail or express overnight mail receipt, to EEOC Supervisory Trial Attorney Ronald L. Phillips at the EEOC's Baltimore Field Office.

13.    In the event that any of the above-referenced payments cannot be delivered to the aggrieved persons designated at the addresses provided, Defendant shall promptly contact EEOC Supervisory Trial Attorney Ronald L. Phillips to obtain current addresses for such persons for the purpose of prompt delivery, or, if a current mailing address is not available, to otherwise make arrangements for prompt payment. Defendant shall thereafter promptly report any efforts made to deliver payment and shall exercise due diligence to complete such delivery.

14.    After the conclusion of the calendar year in which payment is made to the aforementioned aggrieved persons, Defendant shall promptly issue to all such persons an

IRS Form W-2 for the monetary relief amount constituting back pay and an IRS Form 1099-Misc for the monetary relief amount constituting compensatory damages.

## CLASS MONETARY RELIEF

15.     Defendant shall pay the total amount of $305,000.00 in monetary relief into an interest-bearing escrow account ("Class Fund") to be restricted for the sole purpose of monetary relief in this action.  This amount shall constitute back pay with interest, and compensatory and punitive damages payable to Eligible Hiring Claimants and Eligible Recruitment Claimants who the EEOC has determined were subjected to discrimination because of their race or sex in the form alleged in EEOC's Complaint.  Defendant shall pay the aforementioned total amount into the Class Fund in accordance with the following schedule: fifteen (15) monthly payments of $ 20,333.33, with the first payment due not later than one-hundred and fifty days (150) days after entry of the Decree by the Court and the remaining fourteen (14) payments due each thirty (30) days thereafter until payment of the Class Fund is complete.  Defendant shall promptly notify EEOC after it has completed each payment into the Class Fund.

16.     Payments from the Class Fund shall be made and delivered to claimants by a qualified third-party settlement administrator selected by Defendant and identified to the EEOC ("Administrator") with costs of the Administrator's services to be paid first from any interest earned by the Class Fund and any remaining costs of the Administrator's services shall be borne by Defendant.  Defendant shall ensure that the contract with the Administrator defines the Administrator's duties in a manner consistent with the requirements of this Decree.  The determination of eligibility to receive payment from the Class Fund and the amounts to be paid to EEOC's Eligible

9

Hiring Claimants and Eligible Recruitment Claimants shall be made solely by EEOC in accordance with a claims process and eligibility criteria established by EEOC. Neither Defendant nor the Administrator shall have any participation or role in determining the identities of Eligible Hiring Claimants and Eligible Recruitment Claimants or amounts payable to such persons (other than performing payroll tax withholdings required by law).

17.   As a pre-condition to payment, each Eligible Claimant must execute a release agreement, attached as Exhibit C, releasing Defendant from liability and shall be responsible for all taxes, if any due as a result of the above payment except that Defendant shall be responsible for paying its share of all applicable payroll taxes (e.g., FICA).

18.   The Administrator shall be responsible for establishing the Class Fund and making payments from the Class Fund directly to EEOC's Eligible Hiring Claimants and Eligible Recruitment Claimants designated by EEOC, in amounts designated by EEOC. Subject to the payment schedule set forth in Paragraph 15, the Administrator shall make payments of available funds within fourteen (14) days of receiving written notice from EEOC of the names of the claimants to be paid, their addresses, and the amounts to be paid to each claimant.  If the funds are not available at that time, the Administrator shall make payment within ten (10) days of when the funds become available.  Delivery of payment shall be made by certified mail, return receipt or express overnight mail with delivery confirmation. The Administrator shall also be responsible for making applicable state and federal payroll tax withholdings from back pay payments made from the Class Fund, tracking payments made from the Class Fund, and reporting amounts remaining

in the Fund.

19.    The Administrator shall send a photocopy of the checks payable to each Eligible Hiring Claimant and Eligible Recruitment Claimant, along with a photocopy of the certified mail or express overnight mail receipt, to EEOC Supervisory Trial Attorney Ronald L. Phillips at the EEOC's Baltimore Field Office.

20.    Defendant shall be responsible for paying its share of all applicable payroll taxes (e.g., FICA).  The Administrator shall promptly notify Defendant of all back pay amounts paid from the Class Fund to enable Defendant to satisfy its payroll tax obligations.

21.    After the conclusion of the calendar year in which payment is made to the aforementioned aggrieved persons, Defendant shall promptly issue to all such persons an IRS Form W-2 for the monetary relief amount constituting back pay and an IRS Form 1099-Misc for the monetary relief amount constituting compensatory damages.

22.    EEOC shall have two (2) years and eleven (11) months after entry of this Decree within which payments may be made to Eligible Hiring Claimants and Eligible Recruitment Claimants from the Class Fund.  At the conclusion of the aforementioned period, any residual amounts in the Class Fund not designated by EEOC for payment to Claimants shall be paid to a charitable organization previously agreed upon by the parties that provides job training to low income and homeless persons.   It shall be the duty of the Administrator to make payments of residual amounts to the persons or entities identified in this Paragraph within fourteen (14) days of receipt of notice from EEOC of the persons/entities to receive payment and the amounts.

CLASS CLAIMS PROCESS

23.    There shall be a claims process for Eligible Hiring Claimants and Eligible Recruitment Claimants to receive payment from the Class Fund established under Paragraph No. 15, above.

24.    Persons eligible to receive payment from the Class Fund established under Paragraph No. 15, above, shall be restricted to the following:

   (a)    Eligible Hiring Claimants as defined by eligibility criteria set forth in Definition E, above;

   (b)    Eligible Recruitment Claimants as defined by eligibility criteria set forth in Definition F, above; and

   (c) the charitable organization previously agreed upon by the parties that provides job training to low income and homeless persons, but only under the terms described in Paragraph No. 22, above.

25.    The claims process authorized by this Decree shall terminate two years and 11 months after the date of entry of this Decree by the Court.

26.    EEOC shall have sole discretion to establish procedures for the claims process and to make determinations of claimant eligibility and Class Fund payment amounts, subject to the eligibility criteria set forth in Definitions E & F, above.

27.    EEOC is authorized to use all lawful means  give public notice of the claims process under this Decree for the purpose of identifying potential Eligible Hiring Claimants and potential Eligible Recruitment Claimants.

28.    In order to carry out the claims process and provide public notice, Defendant shall fund media advertising to be conducted by EEOC up to a maximum amount of $25,000.

12

Defendant shall only be required to pay for media advertising under this Paragraph, up to the limit set forth in this Paragraph, if such advertising is limited to any or all of the following subjects: (a) identification of the lawsuit as "an employment discrimination case involving hiring and recruitment," the parties, the case number, and the fact there has been a settlement; (b) a statement to the effect that that there is a settlement class fund for which claims are being sought; (c) a description of the categories of persons from whom class fund claim forms are sought; (d) claims process contact information; and (e) the fact that EEOC has placed the advertisement. EEOC shall have sole discretion to choose vendors and identify advertising services to be provided and price for such services. Upon written request of EEOC, Defendant shall then promptly contract with vendors chosen by EEOC and promptly pay for all such advertising up to a maximum amount of $25,000. EEOC shall not receive any such funds. The funds shall be paid directly to third-party vendors designated by EEOC in amounts determined by EEOC and the vendors not to exceed the aforementioned $25,000 total amount.

29.     The form content frequency and identity of media selected for public notice of the claims process shall be committed to the sole discretion of EEOC.

INTERNAL DECREE COMPLIANCE MONITORING OFFICIAL

30.     Defendant shall designate its President, Thomas Hess as the Decree Compliance Monitor ("DCM"). If Mr. Hess is unable to serve, Defendant shall designate an officer or high-level management official of the Defendant as its DCM, who possesses the knowledge, capability, organizational authority, and resources to monitor and ensure Defendant's compliance with the terms of the Consent Decree. Defendant shall assign to the DCM the responsibility of monitoring and ensuring Decree compliance and shall

13

further hold the DCM accountable for carrying out his or her responsibilities as DCM. Defendant shall ensure that the DCM receives all training and assistance necessary to carry out her/his duties in a proficient manner. To the extent the DCM requires technical assistance to enable her/him to proficiently perform a specific function (e.g., statistical analysis expertise) Defendant shall ensure that such assistance is provided by their own qualified personnel or, in the alternative, third-party consultants (e.g., labor economist, statistician, industrial/organizational psychologist). If Defendant has notice that the DCM is unable or unwilling to proficiently perform his/her assigned responsibility, or the DCM is no longer employed by Defendant, it shall identify and assign a new DCM within ten (10) days of such notice.

31.     If Thomas Hess is unable to serve as DCM, Defendant shall provide written notice to EEOC within ten (10) days of entry of this Decree of the full name, job title, work experience, and education/training history (including but not limited to all equal employment opportunity and human resource education/training) of the DCM required by this Decree, and within ten (10) days of the appointment of any new DCM required by this Decree. Written notice shall be provided to EEOC Supervisory Trial Attorney Ronald L. Phillips at the EEOC's Baltimore Field Office.

NUMERICAL HIRING GOALS<br>AND COMPLIANCE ASSESSMENT

32.     Each year during the operation of this Consent Decree, Defendant shall make reasonable, good faith effort to hire and recruit Qualified Black and Qualified female applicants for its open, payroll employee field laborer positions:

(a)     Numerical Hiring Goals Regarding Payroll Employee Positions: Defendant

shall make good faith, reasonably necessary efforts to hire Qualified Black
applicants to fill payroll employee vacancies in its field labor positions so that the
percentage of persons hired to fill vacancies in each of the aforementioned job
titles  who are Black is equal to or exceeds the greater of (i) the percentage of
Qualified Black persons applying for such job titles in the calendar year preceding
the calendar year of the vacancy; or (ii) 10%.  In addition, Defendant shall make
good faith, reasonably necessary efforts to hire Qualified  female applicants to fill
payroll employee vacancies in its field labor positions so that the percentage of
persons hired to fill vacancies in each of the aforementioned job titles who are
female hires is equal to or exceeds the percentage of Qualified female persons
applying for such job titles in the calendar year preceding the calendar year of the
vacancy.

(b)      Applicant Tracking System:   Defendant shall adopt and maintain an
electronic applicant tracking system which shall contain, for each person hired
and for any other person who submitted to Defendant an application, written or
electronic expression of interest, or whom was otherwise considered by Defendant
to be a candidate for employment, at least the following information: (i) full name;
(ii) job title sought; (iii) date of application/candidacy; (iv) home address (with
city, state and zip listed in separate data fields); (v) referral source (if known); (vi)
race; (vii) national origin (Hispanic or non-Hispanic); (viii) sex; (ix) date of hire
(if applicable); (x) job title at time of hire (if applicable); (xi) first work
location/job site assigned (if applicable); and (xii) name(s) of Defendant
personnel who made decision to hire or reject the candidate.   Regarding

race/national origin and sex information, Defendant shall gather such information using means that are non-coercive and otherwise consistent with Title VII, such as voluntary applicant race and sex surveys (kept separate from application materials reviewed by the hiring authority) or, if the applicant does not complete the survey, visual identification of race and sex.

(c)     Goal Attainment Review: Defendant, acting through the DCM, shall conduct an annual review of its Numerical Hiring Goals and attainment and its recruiting efforts. At a minimum, such review shall be based on an analysis of data gathered pursuant to the Decree, any feedback regarding the Numerical Hiring Goals and recruiting efforts from its personnel, as well as any complaints, reports or allegations of discrimination or non-compliance with the Decree and investigations thereof. Subjects to be assessed during the review shall include at least the following: (i) Defendant's progress in achieving the Numerical Hiring Goals set forth in this Decree; (ii) assessment of the reasons for any failure to achieve Numerical Hiring Goals (iii) determination of what steps are required to remedy any failure to achieve Numerical Hiring Goals; and (iv) general review of its recruiting and hiring practices to determine if there are any deficiencies in either that require correction or any potential modifications that may further Numerical Hiring Goals and attainment and the purposes of the Decree.

(d)     Reporting to EEOC: Each year during the operation of this Decree, Defendant shall report to EEOC the following information pertaining to the one-year period immediately preceding the report: (i) a summary setting forth, separately for each job title in its field labor positions, the total number of

applicants of each race and sex; (ii) a summary setting forth the total number of new hires for each job title in its field labor positions and, within each job title, the total number of new hires of each race and sex; (iii) a summary setting forth the number of employees of each race and sex whom were discharged and laid-off; and (iv) if Defendant has not achieved any Numerical Hiring Goals, a detailed narrative explanation of the steps taken to assess why the goal was not met, the reasons that Defendant believes they did not achieve the goal, the measures Defendant intends to undertake to remedy its non-achievement of the goal, and the timetable for implementing those measures. In addition, on the last day of the operation of this Decree, Defendant shall submit one final report to the EEOC encompassing the final twelve month period of its Decree implementation. All reports to EEOC shall be verified by oath or under penalty of perjury by the DCM. The first report shall be due one-year after entry of this Decree.

(e)    Defendant will provide to EEOC, as soon as practicable upon demand by EEOC, any and all documents or data made or kept under the Decree. Notwithstanding the expiration of the other provisions of this Decree, for six (6) months or after the expiration of this Decree the EEOC shall retain the right to obtain from Defendant, as soon as practicable upon demand, all documents or data made or kept under the Decree.

(f)    Defendant shall also take appropriate disciplinary action, up to and including discharge as warranted, against any hiring authority found to have engaged in purposeful race or sex discrimination in violation of Title VII and this Decree or who willfully fails to assist Defendant in its lawful efforts to achieve

Numerical Hiring Goals.   Defendant shall make all records related to such evaluations available to EEOC counsel of record in this matter upon written request.

33.   Each year during the operation of this Consent Decree, Defendant shall make reasonable, good faith effort to utilize the services of Qualified Black and Qualified female temporary or contingent workers referred by employment agencies for its available field laborer assignments for which it utilizes temporary or contingent workers.

(a)   Numerical Selection Goals Regarding Temporary/Contingent Worker Positions:  Defendant shall make good faith, reasonably necessary efforts to select qualified Black temporary/contingent workers for available field laborer assignments so that the percentage of persons selected to fill such assignments who are Black is equal to or exceeds the percentage of qualified Black temporary/contingent workers who were referred by each employment agency from which Defendant obtains such referrals in that calendar year.  Defendant shall also make good faith, reasonably necessary efforts to select qualified female temporary/contingent workers for available field laborer assignments so that the percentage of persons selected to fill such assignments who are female is equal to or exceeds the percentage of qualified female temporary/contingent workers who were referred by each employment agency from which Defendant obtains such referrals in that calendar year.

(b)   Defendant shall adhere to the requirements of Paragraph 7, above.  In addition, Defendant shall inform all employment agencies from whom it obtains referrals of temporary/contingent workers that it is an equal opportunity

18

employer subject to affirmative action requirements and emphasize that the Defendant values racial and gender diversity in its temporary/contingent workforce.

(c)     Temporary/Contingent Worker Referral Tracking System: Defendant shall adopt and maintain an electronic applicant tracking system which shall contain, for each person referred by an employment agency for field laborer assignments, at least the following information: (i) full name; (ii) work assignment for which she/he was considered (including name and address job site); (iii) date of referral; (iv) name of referring employment agency; (v) home address (with city, state and zip listed in separate data fields); (vi) race; (vii) national origin (Hispanic or non-Hispanic); (viii) sex; (ix) date of selection (if applicable); (x) job title at time of selection (if applicable); (xi) first work location/job site assigned (if applicable); (xii) name(s) of Defendant personnel who made decision to select or not select the referred worker; and (xiii) specific reason for non-selection (if applicable). Regarding race/national origin and sex information, Defendant shall gather such information using means that are non-coercive and otherwise consistent with Title VII, such as voluntary race and sex surveys (kept separate from other materials reviewed by the hiring authority) or, if the person does not complete the survey, visual identification of race and sex.

(d)     Goal Attainment Review: Defendant, acting through the DCM, shall conduct an annual review of its Numerical Selection Goals and attainment. At a minimum, such review shall be based on an analysis of data gathered pursuant to the Decree, any feedback regarding the Numerical Selection Goals from its

personnel, as well as any complaints, reports or allegations of discrimination or non-compliance with the Decree and investigations thereof.   Subjects to be assessed during the review shall include at least the following: (i) Defendant's progress in achieving the Numerical Selection Goals set forth in this Decree, assessed separately for each employment agency from which Defendant receives referrals of temporary/contingent workers; (ii) assessment of the reasons for any failure to achieve Numerical Selection Goals (iii) determination of what steps are required to remedy any failure to achieve Numerical Selection Goals; and (iv) general review of its temporary/contingent worker selection practices and communications with employment agencies to determine if there are any deficiencies in either that require correction or any potential modifications that may further Numerical Selection Goals and attainment and the purposes of the Decree.

(e)     Reporting to EEOC:   Each year during the operation of this Decree, Defendant shall report to EEOC the following information pertaining to the one-year period immediately preceding the report: (i) a summary setting forth, separately for each employment agency from which Defendant receives referrals of temporary/contingent workers for field labor positions, the total number of persons referred to it by employment agencies of each race and sex; (ii) a summary setting forth, separately for each employment agency from which it receives referrals of temporary/contingent workers for field labor positions, the total number of persons selected by Defendant of each race and sex; (iii) a summary setting forth, separately for each employment agency from which it

20

receives referrals of temporary/contingent workers for field labor positions, the number of temporary/contingent workers of each race and sex whose assignments were ended; and (iv) if Defendant has not achieved any Numerical Selection Goals, a detailed narrative explanation of the steps taken to assess why the goal was not met, the reasons that Defendant believes they did not achieve the goal, the measures Defendant intends to undertake to remedy its non-achievement of the goal, and the timetable for implementing those measures. In addition, on the last day of the operation of this Decree, Defendant shall submit one final report to the EEOC encompassing the final twelve month period of its Decree implementation. All reports to EEOC shall be verified by oath or under penalty of perjury by the DCM. The first report shall be due one-year after entry of this Decree.

(f)     Defendant will provide to EEOC, as soon as practicable upon demand by EEOC, any and all documents or data made or kept under the Decree. Notwithstanding the expiration of the other provisions of this Decree, for six (6) months or after the expiration of this Decree the EEOC shall retain the right to obtain from Defendant, as soon as practicable upon demand, all documents or data made or kept under the Decree.

(g)     Defendant shall also take appropriate disciplinary action, up to and including discharge as warranted, against any hiring authority found to have engaged in purposeful race or sex discrimination in violation of Title VII and this Decree or who willfully fails to assist Defendant in its lawful efforts to achieve Numerical Selection Goals. Defendant shall make all records related to such evaluations available to EEOC counsel of record in this matter upon written

request.

## JOB OPPORTUNITIES ADVERTISING PROGRAM

34.    In order to recruit a diverse pool of qualified applicants, Defendant shall advertise its job opportunities by reasonable means other than word-of-mouth, including via listings or postings maintained by local certification programs for asbestos (or other relevant hazardous materials) removal, listings or postings maintained by state and local government job services agencies (e.g., Maryland One Stop Career Centers), and place print media or internet job advertisements in publications of a type and frequency reasonably calculated to achieve Defendant's obligations under Paragraph No. 32(a) above. Defendant shall ensure that such listings, postings, and advertisements do not contain inaccurate descriptions of the positions in question and do not violate 42 U.S.C. § 2000e-3(b) with regard to race, national origin, or sex discrimination.

## DISCRIMINATION PREVENTION MEASURES: POLICIES

35.    Defendant shall adopt and adhere to an anti-harassment/anti-discrimination policy that comports with all requirements of Title VII and which shall contain at least the following elements:

(a)    A definition of harassment and discrimination that describes such harassment and discrimination in a manner consistent with the requirements of Title VII, including but not limited to a specific reference to non-discrimination in the recruiting, hiring, and work assignments process;

(b)    A clear, unambiguous prohibition of harassment and discrimination because of characteristics/traits/classes protected under Title VII, a statement that such conduct violates the law and company policy, and a statement that all

22

employees (including temporary agency or loaned employees) are protected by the policy;

(c)   A statement that all employees of whatever rank are responsible for implementing the policy and for cooperating fully in its enforcement;

(d)   A provision that identifies the name, title, and contact information for persons to whom employees should report discrimination/harassment, and that provides reasonable remedial avenues for persons making such reports that are reasonable in number and type and otherwise consistent with the requirements of Title VII;

(e)   A statement that it is the duty of all supervisors and all management officials who receive a complaint of harassment or discrimination to report the complaint to one or more management officials who Defendant shall designate and specifically identify as responsible for receiving and acting upon complaints of harassment and discrimination;

(f)   A statement that it is the duty of all supervisors and management officials to monitor the workplace for discrimination and harassment and that if they suspect that such conduct has taken place, it is their duty to report it to one or more management officials who Defendant shall designate and specifically identify as responsible for receiving and acting upon complaints of harassment and discrimination;

(g)   A statement that employees will not be subjected to retaliation for reporting suspected harassment or discrimination;

23

(h)    A statement that reports of harassment or discrimination and investigations of those reports will be kept confidential unless disclosure is required for investigation or by law;

(i)    A statement that all reports shall be investigated promptly and impartially;

(j)    A statement warning that persons who engage in harassment or discrimination will be subject to disciplinary action, up to and including immediate discharge; and

(k)    A statement that employees and applicants have a right to report practices that they believe to be unlawful harassment or discrimination to government agencies, including the EEOC, which is the agency of the United States Government that enforces federal laws prohibiting employment discrimination and investigates reports of such harassment or discrimination.

(l)    Defendant shall distribute a copy of its policy to all current officers and employees (including temporary agency or loaned employees) within thirty (30) days of entry of this Decree.  Defendant shall provide a copy of this policy to all new officers and employees hired thereafter on such person's first day of work. Defendant shall translate the policy into a language that is understandable to employees who Defendant determines are limited in their ability to read and understand the English language but who are able to read and understand another language.

(m)    Defendant shall provide a copy of this policy to EEOC counsel of record in this matter within thirty (30) days of entry of this Decree.

## DISCRIMINATION PREVENTION MEASURES:
## DECREE COMPLIANCE AND OTHER EEO TRAINING

36.   Defendant will provide sufficient training from any necessary source to enable the DCM to proficiently perform his/her duties under this Decree.  In this regard, within ninety (90) days of entry of this Decree, Defendant shall provide not less than four (4) hours of initial training to the DCM concerning all content of this Consent Decree; Defendant's Numerical Hiring Goals; its obligation to achieve those Goals; potential consequences of failure to achieve the Goals; the Applicant Tracking System and all record-retention requirements of this Decree; the role of Defendant, the DCM, EEOC, and the Court in monitoring Decree compliance; the requirements of Title VII, including but not limited to non-discrimination in hiring, work assignments, and advertising; sexual harassment prevention and correction; internal auditing and other methods for detecting potential bias in employment decisions; and EEO complaint investigations. Within thirty (30) days of the DCM's receipt of such training, his/her name and title and all written materials from the training shall be submitted to EEOC counsel of record for review.

37.   Defendant shall ensure that the DCM and all personnel whose duties require them to conduct investigations of race, national origin or sex discrimination/harassment complaints are reasonably qualified by experience, education, and training to perform those duties.  Defendant shall require such persons to attend a reasonable quantum of professional development training annually concerning equal employment opportunity and EEO investigations.

25

## REPORTING DISCRIMINATION ALLEGATIONS AND WITNESSED CONDUCT TO EEOC

38.    Defendant shall maintain records of any written, verbal or electronic complaints of race, national origin or sex discrimination or harassment involving any Black or female job applicant or employees. These records must include:

(a)    The full- name, social security number- if supplied , work address, last known home address, and last known home telephone number of the applicant or employee making the complaint;

(b)    The date of the report or complaint and;

(c)    A detailed description of the allegations made;

(d)    The names of any witnesses;

(e)    The full name and job title of the alleged discriminating individual;

(f)    The full name, job title and work address of any persons who received any complaints; and

(g)    What actions, if any, Defendant took in response to the complaint.

39.    Defendant will provide a report of the information detailed in Paragraph 38, above, to the Commission within sixty (60) days of any complaints or within sixty (60) days of a person with managerial and/or supervisory authority acquiring actual knowledge of facts that could give rise to an objectively reasonable suspicion that race, national origin, or sex discrimination may have occurred, whichever is first.

Such reports must be updated and sent to the Commission's Baltimore Field Office quarterly (90) days thereafter until final action is taken by Defendant on the complaint or the circumstances suggesting possible discrimination.

## RECORD-RETENTION REQUIREMENTS

40.    For the duration of this Decree Defendant shall retain, and upon demand make available to the EEOC for copying and inspection, the following documents:

(a)    Any and all applications, resumes, cover letters, interview notes, ratings, and any and all other documents related to recruitment, pre-screening and/or hiring that were otherwise received or generated by Defendant;

(b)    Any and all data, reports or documents required to be created or compiled in accordance with this Decree;

(c)    Any and all personnel files;

(d)    Any and all documents created or compiled related to work performed by the DCM or any persons assisting the DCM in performing his/her duties;

(e)    Copies of all advertisements and notices for employment, including website materials;

(f)    All complaints or reports of potential race discrimination against Black job applicants or employees and any related documentation; and

(g)    All training materials and listings of attendees required by this Decree.

Undue burden shall be a defense to non-cooperation with this Paragraph, if Defendant makes such showing to the Court after the parties follow the procedures set forth in Paragraph 44 of this Decree.

41.    Defendant shall comply with all applicable record-keeping requirements of Title VII and the Commission's regulations, including but not limited to, 29 C.F.R. Parts 1602 and 1607.

42    On an annual basis throughout the operation of this Decree, the DCM shall

27

conduct reasonable auditing of Defendant's record-retention practices to ensure compliance with its record-retention obligations under this Decree. The DCM shall cure any non-compliance found and promptly report such non-compliance to EEOC in writing.

## SUBMISSION OF REPORTS AND NOTICES TO EEOC

43. All notifications and reports required under this Decree shall be made in writing and shall be sufficient if hand-delivered or sent by express or regular mail to Ronald L. Phillips, Supervisory Trial Attorney, U.S. Equal Employment Opportunity Commission, Baltimore Field Office, 10 South Howard Street, 3rd Floor, Baltimore, MD 21201. All reports shall be verified by oath or under penalty of perjury.

## DISPUTE RESOLUTION AND COMPLIANCE

44. Upon motion of the Commission, this Court may schedule a hearing for the purpose of reviewing compliance with this Consent Decree. Prior to such motion, the Commission shall notify Defendant, in writing, of the alleged non-compliance. Upon receipt of written notice, Defendant shall have fifteen (15) days to either correct the alleged violation, and so inform the Commission, or deny the alleged violation, in writing;

(a) If the parties remain in dispute they shall attempt in good faith to resolve their dispute;

(b) If the parties cannot resolve their dispute in good faith, the Commission may file a motion with the Court seeking remedies for the alleged noncompliance and for Defendant to show cause why they should not be found in contempt;

(c)     Each party shall bear its own costs, expenses and attorney's fees incurred in connection with such motion; and

(d)     Jurisdiction to resolve any dispute arising under this Decree resides in the United States District Court for the District of Maryland.

45.     The Commission, its agents and employees shall in their discretion have the legal authority to enter Defendant's facilities, upon no less than five (5) business days prior notice to Defendant's counsel, and conduct an on-site inspection to ensure compliance with Title VII and any of the terms of this Decree. Such inspections may, at the discretion of the Commission, include access to any and all relevant documents for the purposes of inspection and duplication; ex parte interviews or depositions of any current non-managerial employees; interviews or depositions of owners, officers, and managers; inspection of any area within the facility; and any other investigatory technique or procedure permitted by Title VII or the Commission's regulations. In addition, upon reasonable prior notice of at least five (5) business days to Defendant's counsel the Commission may in its discretion require that Defendant mandate the appearance of its personnel for interview or deposition at the EEOC's Baltimore Field Office or at any other location within a reasonable commuting distance from those individuals' residences or work locations. Neither the Commission's authority to conduct on-site inspections nor any other provisions of this Decree shall be construed to limit or impair in any manner any other Commission legal authority to conduct investigations of Defendant that is provided by law.

**IT IS AGREED:**

[remainder of page intentionally left blank]

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

_____

DEBRA M. LAWRENCE
Regional Attorney
EEOC-Philadelphia District Office
(including Baltimore Field Office)
City Crescent Building, 3rd Floor
10 S. Howard St.
Baltimore, MD 21201
Office #: (410) 209-2734
Facsimile #: (410) 962-4270

Dated: 9/12/14

_____

RONALD L. PHILLIPS
Supervisory Trial Attorney
EEOC-Baltimore Field Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, MD 21201
Office #: (410) 209-2737
Facsimile #: (410) 962-4270

Dated: 9/12/14

ACM SERVICES, INC.

_____

R. THOM HESS
President

Dated: 9/15/14

FOR DEBRA M. LAWRENCE BY AUTHORIZATION

**IT IS SO ORDERED:**

11/10/14
Dated

HONORABLE PAUL W. GRIMM
United States District Judge